The opinion of the Court was delivered by
Wardlaw, Ch.
This appeal of the defendant, Gibbes L. Elliott, controverts decisions of the Chancellor at two separate stages of the case, and the consideration of it may be conveniently divided in reference to these stages. The bill was filed September 23, 1851, and on the next day, B. F. Hunt & Son, *328 Solicitors of the Court, endorsed upon the subpoena that they appeared for the defendant. On November 19, 1851, the bill was ordered to be taken pro confesso. On 14 and 20 February, 1852, the testimony of certain witnesses was taken by the Master, at the instance of the plaintiff, without notice to the defendant or his solicitors. On March 2, 1852, during the sitting of the Court, which began on the first Monday of February, Mr. Hunt, in behalf of defendant, moved to set aside the order pro confesso, and for leave to file an answer; and also moved, that plaintiff be compelled to produce the title deeds of the lot at the corner of George and St. Philip-streets. These motions being opposed by the counsel of the plaintiff, were refused by the Chancellor. Thereupon, Mr. Hunt served the Chancellor with grounds of appeal, and a statement of facts prefixed, which perhaps in substance, but in form altogether different are repeated in the printed brief. On March 4, 1852, the Chancellor made the following report on these grounds, which, in violation of the rule of Court, is omitted from the brief:
“ The annexed notice of appeal has been served on me; and the statement of facts which it contains is so inaccurate, as to render a report, on my part, necessary. Mr. Hunt made a motion, on the 2d of March, 1852, (the Court having been in session from early in February,) to set aside an order pro con-fesso, and for leave to file an answer in this cause. The motion was not reduced to writing.
“ It was objected to by Mr. Memminger, unless it were made a condition, that the testimony of some witnesses which had been taken, should be allowed to stand; at the same time consenting, that Mr. Hunt’s client might produce the witnesses and examine them further, or cross-examine them on his part.
“ Mr. Hunt resisted the condition, and insisted on his motion as matter of right. The Court decided, that he had no such right under the rule of Court; that the condition was reasonable, *329 and if Mr. Hunt would take his motion on that condition, he was at liberty to do so. He declined this offer.-
“ There was not a word said by the Court by way of requiring the condition to appear as granted upon his motion.
“ He then made a verbal motion, that the plaintiff be required to deposit such title deeds as were in her possession. Mr. Memminger resisted it on the grounds:
“ That he had received no notice of the motion. It appearedj and was admitted, (though at first, Mr. Hunt asserted notice,) that no notice had been given :
“ That Mr. H’s client had not appeared to the suit:
“ That defendant was in contempt for non-appearance, and for not answering, and was not entitled to move, or be heard in the cause:
“ That he was not entitled to offer evidence, (under the rule of Court,) having neither plea nor answer to support by it.
“ The Court waived the question of non-appearance, intimating an opinion, however, that his appearance, though not regular, was good. It also waived the question of contempt; but it ruled, that, under the rule of Court, the defendant was not entitled to his motion. That, under the rule, he was only entitled to be heard upon such objections as he could have urged, if he had demurred to the bill; and was not entitled to introduce evidence in defence, without laying a foundation for it by plea or answer; and that the only possible use he could have for the deeds, was to make them the basis of evidence; and that, if the deeds were material to his interests, he should show the fact by affidavit.
“ Further than this, I do not recognize the correctness of the statement of the facts, made in the grounds of appeal.”
It is stated, and not disputed, that the draft of an answer, not signed nor sworn to, was left with the Register, before the sitting of the Court; but it was not an answer at the time of the application to file it, and became an answer by the jurat of the defendant on the 8th of March, six days after the application.
The reasoning of the Chancellor’s report is entirely satisfac *330 tory to this Court, but from respect to the earnestness with which the appeal on this point has been pressed, some observations may be added. The rule of Court 35, expressly requires, that the motion to set aside an order pro confesso and file an answer, should be made on the first day of the sitting of the Court ensuing the order, after written notice, of ten days before the sitting, of the proposed motion, and that the defendant at the time of the motion shall have filed, that is, have deposited with the Register for filing, or shall then produce, a full and explicit answer or plea. The mover in the present instance, was faulty in all these particulars. He had not given the prescribed notice of his motion ; he did not make his motion on the first day of the sitting, and he produced no answer with a jurat at the time of his motion. To speak of his right to file an answer under such circumstances, is idle talk. It maybe, that upon affidavit, that he was prevented from coming within the terms of the rule by accident, mistake or surprise, the Court might have placed him in the same position as if he had made the motion on the first day of the sitting, after notice; but no such affidavit was made. If he had given the required notice, and made his motion on the first day of the term, still by the rule referred toj he must “submit to any further conditions the Court may impose.” An appellate tribunal should overrule an exercise of judicial discretion by a Judge, in the first instance, only in case of gross abuse of discretion. In this case, we think the discretion was judiciously exercised j if indeed, the Chancellor had any discretion to overrule the resistance to an irregular motion. The condition insisted upon by the counsel of the plaintiff to the motion proposed, that the plaintiff should not be at the expense of producing again at the trial, witnesses examined before the Master, even if irregularly examined, although the defendant might produce them, and treat them as plaintiff’s witnesses, was altogether reasonable. The Court, in admitting the reasonableness of this condition, determined nothing as to the competency or effect of this testimony, which was then unheard. It turned out, that at the hearing, the Chancellor placed no *331 reliance whatever upon this testimony, most of it being incompetent, and all of it insufficient. At the hearing, the counsel of the plaintiff repeated the offer to allow the defendant, although he was only entitled by the rule of Court, to take advantage of any matter which would have been good cause of demurrer, to offer any evidence whatsoever; but he offered no evidence. The defendant suffered no detriment from not filing the answer, for we, perceive, upon perusing it, that it contains nothing in bar of the suit, and is merely argumentative. If authority be needed for the ruling of the Chancellor, it may be found in Foote vs. Van Ranst, 1 Hill Ch. 185, where the analogous question as to the time of filing exceptions under the 26th rule, is explicitly determined.
It is worthy of remark in this case, that while the appellant complains of departure from the regular procedure of the Court, he directly infringes the 53d rule of the Court in the mode of stating his complaint in this appeal, inasmuch ás his brief does not contain the whole decree appealed from, nor the report of the Chancellor on the grounds of appeal. It is also curious, that, while he vehemently resists the introduction of testimony, irregular in the single particular that notice of the examination of the witnesses was not given to him, he treats as matter of right his motion to set aside the order pro confesso, although notice of that motion to the adverse party, expressly required, was not given.
The case was heard on the merits, on the 5 and 8 of March, 1852; and at the hearing, the defendant was permitted to offer any evidence in his possession, and to argue fully the whole case. The matter decided, involved in this appeal, is upon the construction of the following clauses of the will of the testatrix: “ Item. I give absolutely to my son, Di. G. L. Elliott, to him and his assigns forever, -all that lot of land, with the dwelling house, buildings, and the appurtenances thereof, lying and being at the corner of St. Philip and George-streets, being on St. Philip-street 151-2- feet, and on George-street 57 feet; also, that lot of land being and lying next to the aforesaid *332 lot, fronting on George-street 57 feet, and in depth.” “ Item. I give, devise and bequeath all and singular the rest and residue of my whole estate, real and personal, &c., to my four children, Adelaide Gibbes, Barnard S. Elliott, Juliet G. Elliott, and Gibbes L. Elliott, their heirs, executors and administrators and assigns, absolutely and forever, equally, and share and share alike.” Barnard S. Elliott died after the death of testatrix, intestate, and without wife or issue, leaving his brothers and sisters, the parties to this suit, the distributees of his estate. In the will of testatrix there is minute specification of the property devised and bequeathed ; but much of her estate, including fifty-seven slaves, is left to pass under the residuary clause of her will. Upon a survey of the lot owned by testatrix, at the- corner of St. Philip and George-streets, made by R. Q. Pinckney, and supported by his testimony in this case, it appears that the whole lot is divisible into three parcels of 57 feet each, fronting on George-street. It is conceded, and the title deeds of the lot, if produced on the defendant’s motion, could have proved no more, that before the division prescribed in the will, the lots were described as fronting on St. Philip-street. But it is unquestionable, that the testatrix, in her will, might establish and designate any division of the lot, new or old, among the objects of her bounty, according to her caprice. It further appears by Mr. Pinckney’s survey, that a front of 57 feet on George-street, running in depth 151-|- feet on St. Philip-street, on the corner of George and St. Philip-streets, will not include by 16 feet the' whole of the buildings appurtenant to that parcel; but that two lots of 57 feet each, fronting on George-street, will include all the buildings, and leave another uncovered lot of 57 feet front on George-street. There might be some difficulty in settling the extent of the several devises to the defendant, if these devises were to two persons ; but when we find that two parcels, including all the buildings and appurtenances, are given to one person, the defendant, and that an aliquot parcel is left out of the devise, we are relieved from the necessity of determining between the devises of• the separate *333 parcels. It is manifest, however, from this separation of parcels in the devise to the defendant, that the testatrix had made, or contemplated, a division of this lot, differing from the original state of the subject when conveyed to her.
It is argued, that the devise to the defendant must carry the whole lot, inasmuch as the terms of it, otherwise large enough, are restricted only in reference to contents; course and distance being the feeblest means of location. It is obvious, however, that if testatrix intended to give the whole of this property to defendant, there was no need of any division 'into parcels, and that her purpose would be simply and naturally expressed in a single clause describing the whole. In determining the location of a subject granted or devised, course and distance have usually subordinate influence in the judgment, but they may be absolutely controlling. As if a grantor convey 100 acres and no more, as a specific portion of a larger lot. In the present instance, the testatrix, by her will, divides the lot into parcels fronting on George-street, and gives portions to the defendant by exact and limited measurement in feet. The devise to the defendant of the second parcel, as “ fronting on George-street 57 feet and 15i|- feet in depth,” demonstrates. the • division by testatrix into parcels fronting on George-street, and thus fixes the location, if it were otherwise doubtful, of the first parcel devised. Suppose the devise of this second parcel had been to a different person than the defendant, the devisee of the first parcel, it could not be pretended that the defendant, under the construction of the first devise to him, could skip over the second parcel and claim the third; and yet the construction of the will must be the same, whether the devises were to the same person or to distinct persons. It is equally clear, that the devise of the second lot, so exactly described by measurement, does not carry the third; especially, when we consider that the residuary clause of the will covered so large a portion of the estate.
It is further urged, that this Court has no jurisdiction to determine where is the freehold of the third part of this tract, inasmuch *334 as the defendant claims the whole, and acknowledges no tenancy-in common with the other parties to the suit. Magna Charta, and the Constitution of the State, are pressed upon us. It is true, that this Court has no authority, in general, to try questions of title to lands, where the parties claim by distinct titles; Vbut in this case, all the parties claim from the testatrix, acknowledging her title, and the whole dispute is as to the construction of her will. It has never been disputed, that this Court has jurisdiction to determine rights of parties in lands, dependent on the construction of wills or other written instruments, and where there was no fact to be settled by a jury of the vicinage. If the case were in the Court of Law, it would be adjudged, as to doctrine, by the Judge, and not by the jury. But it is not perceived, that any action could be maintained, in the Court of Law, to try titles between tenants in common. This Court by its organization, has not the breakwater against unpopularity afforded by a jury, and counsel with much impunity from public opinion inveigh against usurpation and exceeding of jurisdiction by Chancellors; but we must endeavor, so long as the polity of the State continues the existing judicial establishment, to administer the jurisdiction confided to us, without bias from obloquy.
It is ordered and decreed, that the decree be affirmed, and the appeal be dismissed.
Johnston, Dunktn and Wardlaw, CC., concurred.

Decree affirmed.